**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **KYLE JOHNSON**,<br>21 Astaire Drive<br>Cecelia, Kentucky 42724 | **Case No. 26-cv-537** |
| | **Judge**: |
| **Plaintiff, for himself, and all others similarly situated,** | |
| v. | |
| **CG MEDICAL ASSOCIATES, INC.**<br>Serve Statutory Agent:<br>Corporate Creations Network Inc.<br>119 E. Court St.<br>Cincinnati, OH 45202 | **Jury Demand Endorsed Hereon** |
| **CHETAN GUPTA, M.D.**<br>1365 N. View Drive<br>Miami Beach, FL 33140 | |
| **Defendants.** | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

NOW COMES Plaintiff Kyle Johnson ("Plaintiff"), individually and on behalf of other members of the general public similarly situated, and proffer this Complaint for damages against Defendant CG Medical Associates, Inc. d/b/a CareFirst and Chetan Gupta, MD, individually.

**PRELIMINARY STATEMENT**

1. Plaintiff Kyle Johnson ("Plaintiff"), on behalf of himself and all similarly situated individuals, brings this action against Defendant CG Medical Associates, Inc. d/b/a CareFirst ("Defendant CareFirst") and Chetan Gupta, MD, individually, ("Defendant Gupta") (collectively,

"Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and K.R.S. § 337.285.

2. Defendants operate 33 walk-in clinics in Ohio, 7 walk-in clinics in Kentucky, and 5 walk-in clinics in Nevada.

3. Plaintiff worked for Defendants as a Nurse Practitioner at Defendants' location in Elizabethtown, Kentucky.

4. Defendants repeatedly violated the FLSA and K.R.C. § 337.285 by failing to pay Plaintiff and the similarly situated employees overtime premium pay for hours worked in excess of 40 hours per workweek.

5. Plaintiff and similarly situated employees were entitled overtime premium pay for hours they worked in excess of 40 per workweek because they were non-exempt employees under the FLSA and K.R.C. § 337.285.

6. Defendants maintain a policy and practice of treating Plaintiff and similarly situated employees as non-exempt employees under the FLSA and K.R.C. § 337.285 by not paying Plaintiff and the similarly situated employees on a salary basis.

7. Defendants maintain a policy and practice of not paying Plaintiff and the similarly situated employees on a salary basis by deducting their respective bi-weekly pay in situations where the Plaintiff and the similarly situated employees did not work all of their 7 twelve-hour shifts over the two-week pay periods. Defendants improperly deducted the pay of Plaintiff and similarly situated employees in situations where they worked less than their full twelve-hour shift, in situations where they did not work because the walk-in clinic(s) was closed (e.g., snow days)

even though they were able and willing to work, and in situations where they did not work their shift because the walk-in clinic was closed due to a holiday (e.g., Thanksgiving) even though they worked in the workweek of the holiday.

## JURISDICTION AND VENUE

8. This action is brought pursuant to the FLSA, 29 U.S.C. § 201, et seq., K.R.C. § 337.285, and 29 U.S.C. § 2611 et seq., and 28 U.S.C. § 1331 and § 1343(a)(4).

9. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 which provides for original jurisdiction of Plaintiff's claims arising under the laws of the United States.

10. This Court's jurisdiction is also predicated upon 28 U.S.C. § 1367 as this Class Action Complaint raises claims pursuant to the laws of Kentucky, over which this Court maintains supplemental subject matter jurisdiction.

11. This Court further has jurisdiction because Plaintiff and Defendant CareSource agreed pursuant to "Nurse Practitioner Employment Agreement" (hereinafter, "Employment Agreement") that the "federal courts sitting in Hamilton County, Ohio shall have exclusive jurisdiction over … any disputes related to … the Nurse Practitioner's [Plaintiff] employment with the Corporation [Defendant]." This Court further has jurisdiction because Defendants' principal place of business is Ohio, and Defendant CareFirst is an Ohio corporation.

12. Venue is proper in this forum because, among other reasons, Plaintiff and Defendants agreed pursuant to the Employment Agreement that federal courts sitting in Hamilton County, Ohio "shall be the exclusive venue for any disputes related" Plaintiff's employment with Defendant. Venue is also proper because Defendants' principal place of business is in the City of Cincinnati, Hamilton County, Ohio.

## THE PARTIES

13. Plaintiff is an individual, a United States citizen, and a resident of Kentucky.

14. At all times relevant herein, Plaintiff was an "employee" of Defendants as defined in the FLSA and K.R.C. § 337.285.

15. Defendant CareFirst is an Ohio corporation, with its principal place of business in Ohio.

16. At all times relevant herein, Defendant CareFirst, is a covered "employer" as that term is defined in the FLSA and K.R.C. § 337.285.

17. At all times relevant herein, Defendant Chetan Gupta, MD, is a covered "employer" as that term is defined in the FLSA and K.R.C. § 337.285. Defendant Gupta is a covered "employer" because, among other reasons, Defendant Gupta is the Secretary, President, and CEO of Defendant CareFirst.

18. At all times relevant to this action, Defendants were engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

19. Plaintiff brings this action on his own behalf and on behalf of those similarly situated, and Plaintiff has given written consent to bring this action to collect unpaid overtime and other unpaid compensation under the FLSA. The consent is being filed along with the Complaint pursuant to 29 U.S.C. § 216(b). (Attached as Exhibit A).

## FACTUAL BACKGROUND

### CLASSWIDE FACTUAL ALLEGATIONS

20. During all relevant times, Defendants have operated walk-in clinics in Ohio, Kentucky, and Nevada.

21. The primary function of Defendants' walk-in clinics is to provide urgent care medical services to patients.

22. Each of Defendants' walk-in clinics employs Nurse Practitioners who assist in providing the urgent care medical services.

23. Defendants require Nurse Practitioners they employ to sign a "Nurse Practitioner Employment Agreement" like the Employment Agreement Defendants required Plaintiff to sign.

24. The Employment Agreement states that the "Minimum Hours/Days" a Nurse Practitioner can expect to work per a two-week period is at least 84 hours.

25. The Employment Agreement applies to the Nurse Practitioners who work at Defendants' walk-in clinics, including those working in Ohio and Kentucky. That is demonstrated by, among other things, the Employment Agreement's multiple references to both Ohio and Kentucky law. For example, the Employment Agreement states the "Nurse Practitioner is or will be … licensed to practice in Ohio as a nurse practitioner under O.R.C. Section 4723.43 and is, or will be, licensed as an advance practice registered nurse under KRS Chapter 314." Likewise, the Employment Agreement states the "Nurse Practitioner shall also promote the professional practice of the Corporation to the extent permitted by law and the applicable standards of professional ethics for a nurse practitioner licensed in the State of Ohio, to the extent of the Nurse Practitioner's practice in Ohio, and in the Commonwealth of Kentucky, to the extent of the Practitioner's practice in Kentucky."

26. The Nurse Practitioners at Defendants' Ohio, Kentucky, Nevada locations, upon information and belief, report to Jordyn Mandle, NP. Ms. Mandle works as, among other things, Defendants' Chief Operating Officer.

27. Ms. Mandle has indicated on multiple occasions that it is Defendants' policy and practice to reduce the salary of a Nurse Practitioner on a prorated basis in situations where the Nurse Practitioners did not work their full 12-hour shift, including if the Nurse Practitioner worked only a partial shift.

28. Ms. Mandle also had indicated that it is Defendants' policy and practice to reduce the salary of a Nurse Practitioner on a prorated basis if Defendants' clinics are not open one day for a holiday even if the Nurse Practitioner worked other days within the workweek on which the holiday fell.

29. Defendants also have communicated that they will deduct the salary of a Nurse Practitioner on a prorated basis if the Nurse Practitioner does not work a scheduled shift because Defendants close the clinic for weather-related reasons (e.g., snow), even though the Nurse Practitioner is able and willing to work on the day Defendants closed the clinic.

30. Plaintiff seeks to represent current and former Nurse Practitioners employed by Defendants.

31. All Nurse Practitioners employed at Defendants' walk-in clinics over the last three years have had essentially the same job duties.

32. Defendants paid all Nurse Practitioners a set bi-weekly amount, failing to pay one-and-a-half their regular rate of pay for hours over 40 the Nurse Practitioners worked in a workweek.

33. Defendants have failed to change their practices even though they have been advised on multiple occasions that they are failing to pay on a salary basis by deducting the Nurse Practitioners' bi-weekly amounts for them missing part of their scheduled shifts.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

34. Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

35. Plaintiff began working for Defendants in January 2025 as a Nurse Practitioner.

36. Plaintiff worked for Defendants at Defendants' Elizabethtown, Kentucky, walk-in clinic location.

37. Plaintiff became employed with Defendants when Defendants purchased the walk-in clinic Plaintiff was working at prior to that time. Plaintiff had worked at the walk-in clinic for the previous owners since approximately August 2024.

38. At the time of hire for Defendants, Defendants presented Plaintiff with the Employment Agreement. Defendants advised Plaintiff that signing the Employment Agreement was a condition of employment with Defendants as a Nurse Practitioner, indicating that all Nurse Practitioners are required to sign a "Nurse Practitioner Employment Agreement."

39. Plaintiff worked with another Nurse Practitioner at the time Defendants purchased the walk-in clinic in Elizabeth, Kentucky. The other Nurse Practitioner indicated he would not sign the "Nurse Practitioner Employment Agreement," so Defendants refused to hire the other Nurse Practitioner.

40. Defendants hired another Nurse Practitioner, Lea Hamilton, to work with Plaintiff at Defendants' Elizabethtown, Kentucky, location. Defendants required Ms. Hamilton to sign a "Nurse Practitioner Employment Agreement."

41. Plaintiff was advised by Defendants that the "Nurse Practitioner Agreement" provided the terms and conditions of employment for all Nurse Practitioners at Defendants.

42. Plaintiff interviewed for his Nurse Practitioner position with Ms. Mandle. During the interview, Ms. Mandle advised Plaintiff that all Nurse Practitioners at Defendants were paid a bi-weekly "salary," had to work twelve-hour shifts, and were required to work 84 hours every two weeks by working 7 twelve-hour shifts during that time.

43. Plaintiff's Employment Agreement indicated under Section 3.1 Base Salary that Defendants "shall pay the Nurse Practitioner [Plaintiff] during the term of this Agreement the annual salary specified in the Corporation's initial offer letter and any supplemental correspondence from the Corporation." Defendants provided Plaintiff with an offer letter at the time of hire indicating Defendants would pay Plaintiff an annual salary of $115,000.00.

44. Plaintiff's Employment Agreement indicated under Section 3.2.2 "Paid Absences" that Plaintiff was entitled to up to 7 paid absences each year, which were accrued throughout the year, though those paid absences could only be used if Plaintiff provided a 45-day written notice prior to the absence and Defendants approved.

45. Plaintiff's Employment Agreement indicated, as discussed, under Secction 4.1 Minimum Hours/Days that Plaintiff was to work a minimum of 84 hours per two-week period.

46. Defendants scheduled Plaintiff to work 7 twelve-hour shifts over a two-week period. Plaintiff worked 3 twelve-hour shifts during one week and 4 twelve-hour shifts the following week.

47. Defendants scheduled Plaintiff to work from 8:00 a.m. to 8:00 p.m. during each twelve-hour shift. Plaintiff often worked beyond 8:00 p.m. during Plaintiff's scheduled shifts, however, as Defendants had a policy that required Nurse Practitioners to treat any patients who arrived at the walk-in clinics prior to 8:00 p.m.

48. During the two-week work period of January 22, 2025, through February 4, 2025, Plaintiff worked 5.5 out of his 7 scheduled twelve-hour shifts during that period. Plaintiff missed a full twelve-hour shift and a half of a twelve-hour shift during that two-week pay period.

49. On or about February 8, 2025, Defendants provided Plaintiff with a paystub showing Defendants paid him a gross amount of $3,475.27 for that two-week pay period. Plaintiff's pay for the two-week pay period was below his bi-weekly salary amount of $4,423.00, which equals $631.86 per shift.

50. On February 8, 2025, Plaintiff sent Tina Midgely an email because Defendants paid him below his salary for the two-week pay period between January 22, 2025, and February 4, 2025. In that email, Plaintiff stated, "[w]ho do I speak with about my paycheck calculation?" Ms. Midgely responded the following day, February 9, 2025, via email, "Thank you for your inquiry. Jordyn [Mandle, COO] would be the best person to speak to about hours and payroll. I've copied her in this email to respond to you directly."

51. Plaintiff sent a follow-up email that day to Ms. Mandle stating, "Thanks! Just needing the calculation for my last check. It doesn't show on my stub." Ms. Mandle responded the following day, February 10, 2025, stating: "Hi Kyle, Your check was prorated because you were short 1.5 shifts this past pay period (worked 66 hours instead of 84). Let me know if you have any questions."

52. In December 2025, Defendants failed to pay Plaintiff his bi-weekly salary amount of $4,423.00 for the two-week pay period of November 26, 2025, through December 9, 2025. Defendants paid Plaintiff a gross salary amount of $3,528.22 for that two-week pay period, rather than the full $4,423.00.

53. On December 12, 2025, Plaintiff sent an email to both Ms. Mandle and Ms. Midgley asking why Defendants failed to pay him his full bi-weekly salary amount. Specifically, Plaintiff emailed them stating, "Good morning[,] My paycheck is quite a bit short today."

54. Ms. Midgley initially responded to Plaintiff's email that day, December 12, copying Ms. Mandle, which stated, "Thank you for your inquiry. Per review of your schedule for the 11/26 – 12/9 period you worked 6 shifts of the usual 7 due to our company closure in observance of Thanksgiving day." Ms. Midgley further stated in a separate email that day, again copying Ms. Mandle, "Payroll is prorated accordingly when a salaried provider does not work the normal 7 shifts in a pay period." As such, Defendants deducted one-seventh of Plaintiff's bi-weekly salary, $631.86, because he did not work the Thursday of Thanksgiving because Defendants' facility was closed, even though Plaintiff worked other days for Defendants the week of Thanksgiving.

55. Ms. Mandle also responded that day, December 12, to Plaintiff's email regarding the additional approximately $262.92 Defendants withheld from Plaintiff's bi-weekly pay for the two-week pay period. Ms. Mandle's email indicated that Defendants withheld that amount because "[a]lso, Lea [Hamilton] said she worked 5 hours for you on 12/5 so she was paid for those hours."

56. A couple months later, on February 6, 2026, Defendants provided Plaintiff with his paycheck for the bi-weekly pay period of January 21, 2026, through February 3, 2026, that was below his bi-weekly salary amount of $4,423.00. The paycheck Plaintiff received that day, February 6, was for a gross amount of $3,159.60.

57. On February 6, 2026, Plaintiff sent an email to Ms. Mandle, Ms. Midgley, and Andrea Anderson, stating, "My paycheck was short. Can I please get an explanation at [sic] to why that is?" Ms. Mandle responded that day, February 6, stating, "Lea [Hamilton] said she worked

for you on 1/21, was that not correct?" Plaintiff acknowledged that fact almost immediately by sending an email a few minutes after receiving Ms. Mandle's email that stated, "[y]es shd did," though he further stated, "but it looks shorter than one shift."

58. The only other shift Plaintiff did not work during the two-week pay period of January 21, 2026, though February 3, 2026, was on January 26, 2026, which Plaintiff did not work because Defendants shutdown the clinic due to snow.

59. Plaintiff sent an initial follow-up email on February 12, 2026, to Ms. Mandle and Ms. Midgley since they never responded to his last email on February 6, 2026, asking why his pay was short. Nobody from Defendants ever responded to Plaintiff.

60. On February 18, 2026, Plaintiff sent another follow-up email to Ms. Mandle and Ms. Midgley regarding his pay since they never responded. Defendants continued not to respond to Plaintiff's inquiries regarding his pay.

61. On February 22, 2026, Plaintiff ended his employment at Defendants.

## COLLECTIVE ALLEGATIONS

62. Plaintiff brings the First Count on behalf of himself and all similarly situated current Nurse Practitioners employed at Defendants' locations in Kentucky, Ohio, and Nevada, during the three years prior to filing of this Class and Collective Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

63. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing Plaintiff and the FLSA Collective time-and-one-half overtime pay for hours

worked in excess of 40 per workweek. Plaintiff's claims are essentially the same as those of the FLSA collective.

64. Defendants' unlawful conduct is pursuant to a corporate policy or practice of failing to pay Plaintiff and the FLSA Collective on a salary basis by, among other things, deducting the salary pay of Plaintiff and the FLSA Collective in situations where they worked fewer than full shifts, where they did not work a shift because of holiday even though they worked other days during the holiday week, and where they did not work a shift because of the walk-in clinic was closed due to weather.

65. Defendants' unlawful conduct is pursuant to a corporate policy or practice of failing to pay Plaintiff and the FLSA Collective time-and-a-half overtime pay for hours worked in excess of 40 per workweek.

66. Defendants are aware or should have been aware that federal law required to pay Plaintiff and the FLSA Collective, as non-exempt employees, an overtime premium for hours worked over 40 per workweek.

67. Defendants' unlawful conduct has been widespread, repeated, and consistent.

68. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

69. The FLSA Collective members are readily identifiable and ascertainable.

70. For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and addresses are readily available from Defendants' records.

71. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

72. Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All persons who work or worked as Nurse Practitioners and similar employees for CG Medical Associates, Inc. in Kentucky between June 1, 2023, and the final judgment in this matter ("Rule 23 Class").

73. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

74. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure 23.

75. The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

76. There are more than 30 Rule 23 Class members.

77. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

78. Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay overtime premium pay.

79. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendant's failure to comply with K.R.S. § 337.285.

80. Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

81. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

82. By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

83. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

84. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

85. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit

a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

86. Upon information and belief, Defendants violate K.R.S. § 337.285. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

87. This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3).

88. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a. Whether Defendants paid Plaintiff and the Rule 23 Class members are at the proper overtime wage rate for all hours worked;

b. Whether Plaintiff and the Rule 23 Class members were not paid on a "salary basis" as that term is defined under K.R.S. § 337.285.;

c. Whether Defendant properly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 each workweek;

d. Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

e. The nature and extent of class-wide injury and the measure of damages for those injuries.

**FIRST CAUSE OF ACTION**
**FLSA Collective Action, 29 U.S.C. §201, *et seq*. -**
**Failure to Pay Overtime**

89. All of the preceding paragraphs are realleged as if fully rewritten herein.

90. Plaintiff brings this FLSA claim pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of himself and all other Similarly Situated Persons ("SSPs") of the opt-in class, which includes: All current and former Nurse Practitioners employed by Defendants in Ohio, Kentucky, or Nevada for 3 years prior to the date of filing this Complaint whom have not been paid overtime pay for all hours worked in a week in excess of forty.

91. In the three years prior to the date of filing this Complaint, Defendants have employed approximately 90 Nurse Practitioners. These other Nurse Practitioners are similarly situated to Plaintiff and referred to herein as Similarly Situated Plaintiffs or "SSPs".

92. This action is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA. Plaintiff is a representative of all Nurse Practitioners and is acting on behalf of their interests as well as his own in bringing this action.

93. The SPS are known to Defendants and are readily identifiable through Defendants' payroll records. These individuals may readily be notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, overtime compensation, liquidated damages, interest, attorneys' fees and costs under the FLSA.

94. Plaintiff and the SSPs were not paid on a "salary basis" as that term is defined under the FLSA.

95. Plaintiff and the SSPs were misclassified by Defendants as exempt employees.

96. Plaintiff and the SSPs were not paid an overtime premium for all hours worked over forty in a work week.

97. Defendants were aware that Plaintiff and the SSPs were working significantly more than 40 hours per week, but were not receiving overtime compensation for hours worked in excess of 40 per week.

98. Defendants were also aware that Plaintiff and the SSPs were performing work for Defendants after their scheduled shifts, including caring for patients.

99. Defendants knew or should have known they were required to pay Plaintiff and the SSPs overtime pay.

100. Upon information and belief, Defendants' failure to pay the Nurse Practitioners overtime pay for all hours worked in excess of forty per week was a company policy enforced by Defendants.

101. Accordingly, Plaintiff and the SSPs were forced to work more than 40 hours per week without overtime compensation for the last 3 years. As a result, Plaintiff and the SSPs have been damaged.

**SECOND CAUSE OF ACTION**
**K.R.S. § 337.285. *et seq*. -**
**Failure to Pay Overtime**

102. All of the preceding paragraphs are realleged as if fully rewritten herein.

103. This claim is brought under Kentucky Law.

104. Defendants' repeated and knowing failure to pay overtime wages for hours worked in excess of forty (40) Plaintiffs and the Rule 23 Class was, and continues to be, a violation of K.R.S. § 337.285.

105. Defendants did not pay Plaintiff and the Rule 23 Class on a "salary basis" as that term is defined K.R.S. § 337.285.

106. Defendants misclassified Plaintiff and the Rule 23 Class as "exempt" employees under K.R.S. § 337.285.

107. Defendants violated K.R.S. § 337.285 by not paying Plaintiff and Rule 23 Class overtime premium pay for hours over 40 hours in a workweek.

108. Defendants were aware that Plaintiff and the Rule 23 Class were working significantly more than 40 hours per week, but were not receiving overtime compensation for hours worked in excess of 40 per week.

109. Defendants were also aware that Plaintiff and the Rule 23 Class were performing work for Defendants after their scheduled shifts, including caring for patients.

110. Defendants knew or should have known they were required to pay Plaintiff and the Rule 23 Class overtime pay.

111. Upon information and belief, Defendants' failure to pay the Nurse Practitioners overtime pay for all hours worked in excess of forty per week was a company policy enforced by Defendants.

112. Accordingly, Plaintiff and the Rule 23 Class were forced to work more than 40 hours per week without overtime compensation for the last 3 years. As a result, Plaintiff and the Rule 23 Class have been damaged.

113. As a result of Defendant's willful violations, Plaintiff and the Rule 23 Class are entitled to damages, including but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and individually, for an Order:

**WHEREFORE**, Plaintiff, Kyle Johnson, prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action,

and appointment of Plaintiff and his counsel to represent the collective action members.

B. Unpaid overtime pay, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E. A declaratory judgment that the practices complained of herein are unlawful under K.R.S. § 337.285.

F. An award of unpaid overtime wages, and unreimbursed expenses due under K.R.S. § 337.285.

G. Liquidated damages under K.R.S. § 337.285.

H. An award of prejudgment and post-judgment interest.

I. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

J. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
**GIBSON LAW, LLC**
9200 Montgomery, Rd., Suite 11A
Cincinnati, OH 45242
(brad@gibsonemploymentlaw.com)
Ph: (513) 834-8254

*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiff demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)